IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| v. | ) | |
| | ) | |
| GLOCK GMBH 43, 9MM FIREARM, | ) | |
| SERIAL NUMBER AEYD780, AND FIVE | ) | |
| ROUNDS OF AMMUNITION SEIZED ON | ) | |
| FEBRUARY 5, 2025, | ) | |
| | ) | |
| Defendants. | ) | **COMPLAINT IN FORFEITURE** |

NOW COMES plaintiff, the United States of America, by Carol M. Skutnik, Acting

United States Attorney for the Northern District of Ohio, and Jason M. Katz, Assistant U.S.

Attorney, and files this Complaint in Forfeiture, respectfully alleging on information and belief

the following:

### JURISDICTION AND INTRODUCTION

1.      This Court has subject matter jurisdiction over an action commenced by the

United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C.

Section 1355(a).  This Court also has jurisdiction over this particular action under 18 U.S.C.

Section 924(d)(1).

Section 1355(a).  This Court also has jurisdiction over this particular action under 18 U.S.C. Section 924(d)(1).

2.     This Court has *in rem* jurisdiction over the defendant properties pursuant to: (i) 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and (ii) 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395, because the action accrued in this district and the defendant properties are found in this district.

3.     Venue is proper in this district pursuant to: (i) 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and (ii) 28 U.S.C. Section 1395 because the action accrued in this district and the defendant properties are found in this district.

4.     This Court will have control over the defendant properties through service of an arrest warrant *in rem*, which the United States Marshals Service will execute upon the defendant properties.  *See* Supplemental Rule G(3)(b) and G(3)(c).

5.     On February 5, 2025, the defendant properties were consensually seized at the Manhattan Avenue, Youngstown, Ohio, residence of Marilynn Campbell.

6.     The defendant properties are now in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

7.     ATF commenced an administrative forfeiture proceeding against the defendant properties.  A claim to the defendant properties was submitted in the administrative forfeiture proceeding by Marilynn Campbell, the girlfriend of Alonzo Jackson, thereby requiring the filing of the instant judicial forfeiture action.

8.     The defendant properties are subject to forfeiture to the United States under 18 U.S.C. § 924(d)(1) in that they were involved in or used in a knowing violation of 18 U.S.C. §

9.      Section 922(a)(6) makes it unlawful for a person to knowingly make a materially false statement to a licensed firearm dealer, that was intended to or likely to deceive that dealer, during the purchase of a firearm.

10.     Section 922(d)(1) makes it unlawful for a person to knowingly sell or dispose of a firearm to another person while knowing or having reasonable cause to believe that the other person had been convicted of a felony.

11.     Section 922(g)(1) makes it unlawful for any person who has been convicted in any court of felony to possess, in or affecting commerce, any firearm or ammunition.

12.     Section 924(a)(1)(A) makes it unlawful for a person to knowingly make a false statement or representation to a licensed firearm dealer when that statement pertained to information that the dealer was legally required to keep.

## DESCRIPTION OF THE DEFENDANT PROPERTIES

13.     The following properties are the defendant properties in the instant case.  Each of the items was seized on February 5, 2025, and was manufactured outside of the state of Ohio:

     a.)      Glock GMBH 43, 9mm firearm, serial number AEYD780.

     b.)      Five rounds of ammunition.

## FORFEITURE

14.     At all times relevant to this complaint, Alonzo Jackson ("Jackson") was a felon, having been convicted of, among other offenses, Aggravated Robbery, on or about April 12, 2011, in case number 10 CR 344, in the Mahoning County, Ohio, Court of Common Pleas.  His status as a felon prohibits him from possessing firearms and ammunition.

15.     On August 20, 2020, Jackson, using his Facebook handle "Zoe Blood," made a Facebook post stating that he was in a relationship with Marilynn M J Campbell ("Campbell"). Pictures from the accounts related to that post match those of Jackson and Campbell.

16.     On November 25, 2020, Campbell purchased a Glock GMBH 43, 9mm firearm, bearing serial number AEYD780 ("the Glock 43") from Fin Feather Fur Outfitters, 138 Boardman Poland Road, Youngstown, Ohio 44514, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code.  While making that purchase, Campbell knowingly made a false and fictitious written statement to Fin Feather Fur Outfitters, which statement was intended and likely to deceive Fin Feather Fur Outfitters, as to a fact material to the lawfulness of such sale of said firearm to Campbell under chapter 44 of Title 18, in that Campbell represented that she was the purchaser of the firearm, when in fact, she was purchasing said firearm for another individual.   That false and fictitious statement pertained to information that Fin Feather Fur Outfitters was required to keep.

17.     On December 6, 2020, Jackson, using his Facebook handle "Zoe Blood," posted a picture of multiple firearms with the caption: "I want to thank Marilynn M J Campbell [tagging her Facebook profile] for t he [*sic*] birthday gift I love it".  In the post's comments, a Facebook user asked, "Hell which one?", and Jackson replied, "The under the 1911".  The firearm under the 1911 style firearm in the picture is a Glock Model 43.

18.     In mid-December, 2020, Jackson celebrated his birthday.

19.     In April of 2024, Jackson was released from the Ohio Department of Rehabilitations.

20.     On October 1, 2024, Jackson reported to the Youngstown Police Department that a package that had been sent to him from "gunmagwarehouse.com" had been stolen.  Per that

4

company, the customer associated with that order was "Zoe Blood" and had an email address of "RGFBlood@gmail.com". The allegedly intercepted package contained magazines, a holster, and a firearm grip adaptor.

21.     On November 7, 2024, Tashia Fizer ("Fizer"), the then girlfriend of Jackson, purchased a Stoeger, Model STR-9, 9mm firearm at Fin, Feather, Fur in Boardman, Ohio ("the Stoeger"). During the purchase, Fizer represented that she was the actual purchaser of the firearm, even though, in actuality, she was purchasing that firearm for Jackson, an act commonly called "straw purchasing." Fizer and Jackson are both under federal indictment for this event, in United States v. Jackson, et al. 4:25CR109 (N.D. of Ohio), with Count 2 charging Fizer with a violation of 18 U.S.C. § 922(a)(6) (False Statement During the Purchase of a Firearm) and Jackson with aiding and abetting Fizer's violation of 18 U.S.C. § 922(a)(6). Jury trial on that case is presently set on July 21, 2025, in Judge Christopher A. Boyko's Cleveland, Ohio, courtroom.

22.     About six hours after Fizer purchased the Stoeger firearm, that firearm was involved in a shooting at the same address where Jackson then resided. Twenty-four shots were fired.

23.     On November 24, 2024, Jackson was arrested with the loaded Stoeger firearm. Jackson is under federal indictment for this event, in United States v. Jackson, et al. 4:25CR109 (N.D. of Ohio), with Count 3 charging Jackson with a violation of 18 U.S.C. § 922(a)(1) (Felon in Possession of Firearm and Ammunition).

24.     On February 5, 2025, after Jackson failed to appear for a state-court hearing, Jackson was arrested after he left Campbell's residence. A search related to that arrest yielded a Glock firearm and a Norinco firearm at that time, both of which had his DNA on them. Jackson

is under federal indictment for this event, in <u>United States v. Jackson, et al</u>. 4:25CR109 (N.D. of Ohio), with Count 4 charging Jackson with a violation of 18 U.S.C. § 922(a)(1) (Felon in Possession of Firearm and Ammunition).

25.     On February 5, 2025, the same date as Jackson's arrest, Campbell gave a voluntary statement to members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the ATF").  During that statement, Campbell said that she had purchased only one firearm, which was a Glock that was then in her possession.

26.     Campbell said that she and Jackson had gotten back together in November of 2024.  Campbell said that she knew that Jackson was not allowed to have firearms because he is felon who had gone to prison multiple times, most recently being released from incarceration in April of 2024 after he had served an 18-month sentence.  Campbell said that she had known this since she and Jackson had initially become involved with each other, which was even before their four-year-old son, that Jackson had been to prison.

27.     Campbell recalled that Jackson had accompanied her when she went to purchase the firearm that was then in her possession.  At the firearms store, Jackson told her which firearm to purchase, but Campbell was too confused, so she left the store with Jackson, dropped him off at his home, and then returned to the firearms store a few hours later.  Campbell said she then purchased the Glock 43 with her own money.  She chose that firearm because it was the one that she liked.  When law enforcement asked why Campbell had not purchased ammunition to accompany her Glock, Campbell said that she had purchased ammunition.  The receipt from that November 25, 2020, sale does not reflect the purchase of any ammunition.

28.     When confronted with the December 6, 2020, Facebook post, Campbell said she remembered the picture being taken.  She claimed that she had placed the Glock 43 on the couch

so it could be photographed with the other firearms.  She said that Jackson had taken and then posted the photograph because he was trying to "flex."

29.    When Campbell had asked why the Cadillac that Jackson drove was in her name, she claimed that she had done so because it would allow Jackson to use it to plow driveways. Later in the interview, however, Campbell said Jackson did not work.

30.    Campbell said that Jackson had come over the night before the interview and had slept on the floor because the couch was broken.  Campbell recalled events from a few weeks prior when she and Jackson had been watching a television show where the actors were holding firearms with flashlights attached.  Campbell said she had mentioned to Jackson that she would like the Glock 43 to have that accessory.  Jackson replied that he probably had a "rail" for the firearm.  Then, the night before the interview, Jackson had asked if she still wanted the accessory on the Glock 43.  Campbell said she did and then took the Glock 43 out of her purse, unloaded it, and gave it to Jackson.  Jackson then installed the rail and gave it back to Campbell.  Campbell said she then reinserted the magazine and replaced the Glock 43 in her purse.  When asked how it was that Jackson happened to have a rail available to install on that particular firearm, Campbell said that she had thought that all rails were similar and could fit on all firearms.  When asked why she had provided a firearm to a person she knew was a felon, Campbell replied that she thought felons could legally possess unloaded firearms.

31.    Campbell then said that the only firearm in her house was the Glock 43, which was on a shelf in the dining room.  Campbell said that Jackson had access to the firearm, knew where it was kept, and could come and go as he pleased from Campbell's home.

7

32.     Campbell said she had gone to a shooting range and shot the Glock 43.  Campbell said that Jackson had accompanied her to the range, but had not shot because he did not have an identification card.

33.     When law enforcement asked if it could see the Glock 43, Campbell said it was around the corner on a shelf.  After law enforcement looked, but could not find it, Campbell said she would show them.  Law enforcement instructed Campbell to not handle the firearm and to simply show them where the firearm was kept.  Despite this instruction, Campbell bent over, took the Glock 43 out of her purse, and placed it on the table.  The Glock 43 was loaded with five rounds of ammunition.  When law enforcement asked Campbell why she had handled the firearm despite being instructed not to, Campbell replied that she was just grabbing it for them. When law enforcement asked Campbell why she had not just grabbed the entire purse and placed that on the table, Campbell replied that she did not know.

34.     Campbell then gave consent for law enforcement to search her residence and her vehicle.  Nothing of note was found in the vehicle.  When law enforcement started searching the area where Campbell said Jackson slept, Campbell stood up and grabbed a black shoulder bag that had been on the couch.  Law enforcement's search of that bag yielded two bags of cocaine weighing 10.88 grams total, a napkin holding 0.27 grams of cocaine base, two dice, and six bank cards in Jackson's name.

35.     Law enforcement also searched the purse that had contained the Glock 43 before Campbell had removed it, contrary to law enforcement's instructions.  In that purse, law enforcement found a second firearm: a Glock 21, .45 caliber pistol, bearing serial number WF873 ("the Glock 21").  That Glock 21 was loaded and also had an aftermarket rail attached to it, which happened to be the same brand of rail attached to the Glock 43.  Campbell told law

enforcement that she did not know that the Glock 21 was in the purse, and she said that it was not hers.

36.     Under the purse, law enforcement found two bags containing marijuana. Campbell claimed that the marijuana was hers, saying that it was for personal use despite indicia that the marijuana was prepared for sale, including the quantity and its having been packaged into individual baggies.

37.     A third firearm was found on top of the kitchen's refrigerator.  This was a Norinco, Model 213, 9mm pistol, bearing serial number 713079 ("the Norinco pistol").  This firearm was also loaded.  The ammunition loaded in the Norinco pistol (a 9mm firearm) had the same headstamp markings as the ammunition found in the Glock 43 (also a 9mm firearm).

38.     Campbell said neither the Norinico pistol nor the Glock 21 were hers or her 17-year-old son's, who lived with her.  Campbell was also upset that the firearms and the suspected drugs were in her house where her four-year-old son also lived.

**CONCLUSION**

39.     By reason of the foregoing, the defendant firearm and ammunition are subject to forfeiture to the United States under 18 U.S.C. § 924(d)(1) in that they were involved in or used in a willful violation of 18 U.S.C. § 922(d)(1), a knowing violation of 18 U.S.C. § 922(a)(6), a knowing violation of 18 U.S.C. § 922(g)(1), and a knowing violation of 18 U.S.C. § 924(a)(1)(A).

WHEREFORE, plaintiff, the United States of America, requests that the Court enter judgment condemning the defendant firearm and ammunition, forfeiting them to the United States, and providing that the defendant firearm and ammunition be delivered into the custody of

the United States for disposition according to law, and for such other relief as this Court may

deem proper.

Respectfully submitted,

Carol M. Skutnik
Acting United States Attorney, N.D. Ohio

By: Jason M. Katz (Ohio: 0076104)
Assistant United States Attorney, N.D. Ohio
Carl B. Stokes U.S. Court House, Suite 400
801 West Superior Avenue
Cleveland, Ohio 44113
216.622.3844 / Fax: 216.522.7499
Jason.Katz@usdoj.gov

**VERIFICATION**

STATE OF OHIO        )
                        ) SS.
COUNTY OF CUYAHOGA  )

      I, Jason M. Katz, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action.  The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

                                     Jason M. Katz (Ohio: 0076104)
                                     Assistant United States Attorney, N.D. Ohio

      Sworn to and subscribed in my presence this _11th_ day of June, 2025.

                              Notary Public

                                    DANIEL R. RANKE, Attorney At Law
                                    Notary Public - State of Ohio
                                    My commission has no expiration date.
                                    Section 147.03 O. R. C.